UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYANN CRELLIN, | Case No. 1:24-cv-00996-BAM |
| Plaintiff, | ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE TO ACTION |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| Defendant. | (Docs. 13, 17) |

**Findings and Recommendations**

**INTRODUCTION**

Plaintiff Tyann Crellin ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits under Title II of the Social Security Act and for supplemental security income under Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted without oral argument, to Magistrate Judge Barbara A. McAuliffe for the issuance of findings and recommendations.

Having considered the briefing and record in this matter, the Court finds that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence as a whole and is based upon proper legal standards. Accordingly, it will be recommended that Plaintiff's motion

1

for summary judgment be denied, the Commissioner's request to affirm the agency's determination to deny benefits be granted, and that judgment be entered in favor of the Commissioner.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed an application for disability insurance benefits on December 21, 2021, and an application for supplemental security income on January 24, 2022. AR 288-94, 295-304.[1] Plaintiff alleged she became disabled on January 1, 2020, due to herniated disk, sciatica nerve pain, bipolar, agoraphobia, diabetes, anxiety, and depression. AR 338. Plaintiff's applications were denied initially and on reconsideration. AR 189-92, 194-98, 201-05, 207-11. Subsequently, Plaintiff requested a hearing before an ALJ, and following a hearing, ALJ Melinda Yurich issued an order denying benefits on December 28, 2023. AR 19-36, 46-76. Thereafter, Plaintiff sought review of the decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-5. This appeal followed.

### Relevant Hearing Testimony and Medical Record

The relevant hearing testimony and medical record were reviewed by the Court and will be referenced below as necessary to this Court's decision.

### The ALJ's Decision

On December 28, 2023, using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 19-36. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2020, the alleged onset date. AR 24. The ALJ identified the following severe impairments: degenerative disc disease; diabetes mellitus; hypertension; agoraphobia with panic disorder; affective mood disorder; and posttraumatic stress disorder. AR 24-25. The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments. AR 25-28. Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

light work, except that she could not climb ladders, ropes, or scaffolds, could climb ramps and stairs, could occasionally balance, stoop, kneel, crouch, and crawl, and could not work at unprotected heights or around dangerous moving machinery. She also could understand, remember, and carry out simple instructions, sustain attention and concentration to complete simple tasks, could adapt to changes in a routine work setting, could interact with co-workers and supervisors occasionally, but could not work with the general public. AR 28-34. With this RFC, the ALJ determined that Plaintiff was unable to perform any past relevant work, but that there were other jobs in the national economy that Plaintiff could perform, such as small product assembler, routing clerk, and marker/pricer. AR 34-35. The ALJ therefore concluded that Plaintiff had not been under a disability from January 1, 2020, through the date of the decision. AR 35.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

**DISCUSSION**[2]

Plaintiff contends that the ALJ failed to provide clear and convincing reasons for discounting her allegations of physical and mental dysfunction. (Doc. 13 at 10, 15.) Plaintiff further argues that the ALJ failed to explain her material departure from the prior administrative medical findings of Stephen Saxby, Ph.D., and the opinion of the consultative examiner, Meghan Hamill, Psy.D. (*Id.* at 10-11.)

**A. Subjective Allegations**

Plaintiff first argues that the ALJ failed to provide clear and convincing reasons for discounting her allegations of physical and mental dysfunction. (Doc. 13 at 10, 15.)

In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). First, the claimant must produce objective medical evidence of his impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding

---

[2] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

1  the severity of his symptoms only by offering specific, clear and convincing reasons for doing so.
2  *Id.* at 1015.

3       Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably
4  be expected to cause the alleged symptoms, but discounted her statements concerning the
5  intensity, persistence and limiting effects of those symptoms. AR 29. The ALJ was therefore
6  required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective
7  complaints.

8       The Court finds that the ALJ provided specific, clear and convincing reasons for
9  discounting Plaintiff's subjective complaints of physical and mental dysfunction. First, the ALJ
10 found that the objective clinical evidence did not support the degree of limitation alleged. AR 30-
11 32. Although lack of supporting medical evidence cannot form the sole basis for discounting
12 testimony, it is a factor that the ALJ can consider. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th
13 Cir. 2005). With respect to Plaintiff's allegations of physical dysfunction, the ALJ explained that
14 the medical evidence did not support the degree of severity alleged as to her diabetes mellitus.
15 AR 30. The ALJ acknowledged changes in Plaintiff's A1c, but noted that she did not present
16 with complications secondary to diabetes, and there was no evidence of end organ damage. AR
17 30 (citing Ex. 11/F [AR 830-904]). Additionally, the ALJ explained that objective clinical
18 examinations failed to corroborate the full extent of the alleged severity, limiting effects, and
19 frequency of her physical condition. AR 30. Specifically, the ALJ found that while Plaintiff had
20 some positive findings on examination, they were generally limited to tenderness, decreased
21 range of motion, palpable trigger points, and decreased sensation. AR 30, citing AR 986
22 (tenderness, decreased range of motion, palpable trigger points), 990 (same;), 991 (decreased
23 sensation), AR 1229 (decreased range of motion in lumbar and thoracic back), 1514 (decreased
24 sensation). However, the ALJ further found that physical examinations generally showed normal
25 range of motion, strength and tone, no edema, no atrophy, intact sensation, normal gait,
26 symmetrical reflexes, and intact cranial nerves. AR 30, citing 776 (no lower extremity edema,
27 intact cranial nerves), 779 (same), 782 (normal range of motion in extremities, no lower extremity
28 edema, no motor deficit), 875 (normal range of motion, strength, and tone), 877, 880, 882, 885,

888, 893 (same), 896 (normal range of motion, strength, and tone, cranial nerves, motor and sensory functions, reflexes, gait and coordination intact), 901 (normal range of motion, strength, and tone), 904 (same), 916 (normal tone in upper and lower extremities without atrophy or abnormal movements, 5/5 motor strength throughout in upper and lower extremities, sensation symmetric to light touch), 987 (normal gait, normal strength and tone, no atrophy), 990 (normal gait), 995 (normal gait, normal strength and tone), 1035 (normal range of motion, strength, and tone, walking normally), 1041 (normal range of motion, strength, and tone), 1043, 1046 (same), 1115 (normal range of motion), 1132 (intact gait, normal range of motion), 1442 (normal range of motion, strength, and tone, walking normally), 1445 (normal range of motion, strength, and tone), 1448, 1450, 1456 (same), 1459 (cranial nerves, motor and sensory function, reflexes, gait, and coordination intact), 1462 (normal range of motion, strength, and tone), 1500 (same), 1610 (normal range of motion), 1657 (same).  Additionally, the ALJ cited the objective clinical findings during a consultative examination, which showed a negative straight leg raise, normal range of motion, 5/5 strength in the bilateral upper and lower extremities (including grip), normal bulk and tone, no atrophy, grossly intact sensation, normal gait, symmetrical reflexes, and grossly intact cranial nerves. AR 30-31, 969-70.  The ALJ expressly acknowledged Plaintiff's chronic pain complaints but found that there were few objective signs of limitations on exam, noting that Plaintiff did not have chronic motor deficits or gait changes that would limit her to sedentary work, she could heel and toe walk, and she did not need an assistive device.  AR 31, 969-70, 1512-15.

With respect to Plaintiff's allegations of mental dysfunction, the ALJ likewise considered that positive clinical findings in the objective medical record failed to corroborate the full extent of the alleged severity, limiting effects, and frequency of her mental health symptoms. AR 31. For example, the ALJ considered Plaintiff's report of poor short-term memory and worsening cognitive issues with increased difficulty spelling and doing mental math. AR 31, 866 (January 2022: "Pt complains that her short term memory is very poor."), 918 (May 2022: "Patient reported worsening cognitive issues for the last year with increased difficulty spelling and doing math."). However, the ALJ noted that a subsequent brain MRI in July 2022 showed small vessel

ischemic disease changes but was otherwise normal. AR 31, 916. The ALJ further considered that an electroencephalogram in December 2022 did not show interictal epileptiform discharges or seizures, and it was noted that Plaintiff's short-term memory impairment was most likely secondary to her behavioral health issues. AR 31, 1092. Further, the ALJ acknowledged that mental status examinations during treatment found slowed speech, anxious and sad mood, yet the ALJ also determined that additional examination findings noted that Plaintiff had normal speech, euthymic mood, congruent affect, normal attention/concentration, normal psychomotor activity, goal directed thought process, no suicidal or homicidal ideations, auditory or visual hallucination or paranoia, normal insight/judgment, and intact memory. AR 31, citing AR 854 (normal speech, congruent affect, normal attention/concentration, normal psychomotor activity, goal directed thought process, normal thought content, no suicidal or homicidal ideations, no auditory or visual hallucinations or paranoia, intact memory), 861 (normal psychomotor activity, normal speech, goal directed thought process, normal thought content, no suicidal or homicidal ideations, hallucinations, or paranoia, normal attention and concentration, intact memory), 863 (mood predominantly euthymic), 867 ("appropriate affect and demeanor; normal speech pattern; grossly normal memory"), 870 (same), 877, 880, 885, 888, 896, 901, 904; 915 (denies visual/auditory hallucinations, or paranoia ideations, and "[a]ble to recall details from immediate and distant past with accuracy"); 954, 956, 958, 960 (normal psychomotor activity, goal directed though process, normal thought content "without presence of suicidal or homicidal ideations, auditory or visual hallucinations or paranoia," predominately euthymic mood), 962, 964, 1583 (normal mood, behavior, judgment), 1589 (same), 1594, 1599, 1610, 1628, 1636, 1643.

Second, the ALJ considered that Plaintiff did not receive treatment consistent with her reported debilitation. AR 30. In evaluating symptoms, an ALJ may consider the type of treatment received. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). With respect to Plaintiff's subjective complaints regarding her degenerative disc disease, the ALJ acknowledged that Plaintiff was likely to have some pain and limitations. The ALJ also acknowledged that during treatment Plaintiff reported neck pain, low back pain, nerve pain down her left leg, multiple joint pain, muscle spasms, numbness, tingling, weakness, and gait disturbance. AR 30. However, the

ALJ noted that Plaintiff took medication (Tramodol) for her back pain, she did not require surgery, and the record did not indicate that such intervention was needed, and that certain of her requests for pain injections had been denied. AR 30, 60 (taking Tramadol, no surgery, pain shots denied) 985, 989, 993, 1034. The ALJ concluded that there was medication management, but no indication that further intervention was needed for her pain complaints. AR 31.

Plaintiff argues that her treatment for neck and back pain was not conservative as suggested by the ALJ, and that treatment with pain medications and injections does not qualify as conservative medical treatment. (Doc. 13 at 12-13.) Contrary to Plaintiff's argument, the ALJ did not characterize Plaintiff's treatment as "conservative" or cite "conservative treatment" as a reason for discounting Plaintiff's subjective complaints. Rather, the ALJ determined only that Plaintiff's treatment was "not consistent with reported debilitation," (AR 30), and there was medication management for her pain complaints and no indication that further intervention was needed, (AR 31).

Plaintiff argues, however, that there *were* recommendations for further interventions by several doctors, including referral to neurosurgery, offers of cervical epidural steroid injections, referrals to physical therapy, suggestions for alternative medicine treatments, and additional opioid pain medications. (Doc. 13 at 13.) To support her argument, Plaintiff relies primarily on treatment notes from 2022, after she fell and hit her head in July 2022 (AR 967, 1464). In those notes, her pain management doctors referred her to physical therapy, offered cervical epidural steroid injections, recommended referral to a neurosurgeon, recommended alternative medicine treatments, and continued her on Tramadol. (*Id.* at 13, citing AR 987, 991, 993-97.) However, by December 2022, Plaintiff reported her health was improving, she planned to discontinue pain management, she did not seek a neurosurgery consultation, and she opted for pain medication prescribed by her primary care physician. AR 1045. Additionally, later treatment records noted full range of motion in her neck, normal range of motion of her cervical back, normal musculoskeletal range of motion, strength, and tone. AR 1038 (July 2023), 1041 (April 2023), 1115 (May 2023).

Plaintiff additionally argues that the ALJ's finding that no further interventions were

needed failed to take into account, among other things, Plaintiff's "statements that she was 'deathly' afraid of surgery." (Doc. 13 at 13-14.) This argument is not persuasive as the ALJ did not discount Plaintiff's subjective complaints based on a failure to comply with recommended treatment, nor does the record reflect that surgery was recommended for Plaintiff's physical condition.

Third, the ALJ discounted Plaintiff's allegations of dysfunction based on the effectiveness of her treatment and medications. AR 30. The effectiveness of medication or treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability."). With respect to her physical dysfunction, the ALJ noted that Plaintiff's hypertension was well controlled with medications. AR 30, 832 ("HTN well controlled. Continue Lisinopril 10 mg q am."). Further, with respect to her allegations of mental dysfunction, the ALJ observed that Plaintiff's symptoms improved and were stable on medications. AR 32. For example, the ALJ pointed out that throughout 2022, Plaintiff continued to report that she was doing well, her mood had been steady, depression and anxiety were responsive to treatment, she denied perceptual disturbance, and sleep and appetite were within normal limits. AR 32, 958 ("doing well," "reports her mood has been steady," "depression and anxiety are responsive to treatment"), 960 ("doing okay," "reports her mood has been mostly steady," "Depression and anxiety are responsive to treatment," "Denies perceptual disturbance," "sleep and app are wnl"), 962 ("doing well," "reports her mood has been steady," "Depression and anxiety are responsive to treatment"), 964 ("reports doing well with her medication"); 1525 ("reports her medication is well adjusted"), 1529 ("her mood has been steady," "depression and anxiety are responsive," "symptoms are well targeted"). The ALJ concluded that Plaintiff's most recent psychiatric medical records showed that she had good response to medication. AR 32.

Plaintiff agrees that the record showed her mental health symptoms had improved and were relatively stable "with very strong psychiatric medications." (Doc. 13 at 16.) Plaintiff argues, however, that the relative stability did not start until around the end of 2021, and mental

9

1   status examinations prior to late 2021 regularly showed her as anxious with a blunted affect, slow
2   thought process, and slow speech. (*Id.*) Plaintiff's argument is not persuasive. The ALJ also
3   acknowledged that mental status examinations during treatment found slowed speech and anxious
4   mood, but the weight of "additional examination findings noted that the claimant had normal
5   speech, euthymic mood, congruent affect, normal attention/concentration, normal psychomotor
6   activity, goal directed thought process, no suicidal or homicidal ideations, auditory or visual
7   hallucinations or paranoia, normal insight/judgment, and intact memory." AR 31.
8        Plaintiff further argues that despite her relative improvement after 2021, she still had
9   "extreme sleepiness" cause by her medications, and short-term memory loss. (Doc. 13 at 16,
10  citing AR 378, 916.) However, Plaintiff cites only her own reports of extreme sleepiness and
11  short-term memory loss, but no treatment records documenting side effects from medications or
12  reflecting memory problems on examination.
13       Fourth, the ALJ discounted Plaintiff's subjective complaints based on her activities of
14  daily living. AR 31-32. An ALJ may properly discount a claimant's subjective complaints when
15  the daily activities demonstrate an inconsistency between what the claimant can do and the degree
16  that disability is alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (an ALJ may
17  consider "whether the claimant engages in daily activities inconsistent with the alleged
18  symptoms"), superseded by regulation on other grounds. Here, with respect to Plaintiff's
19  allegations of physical dysfunction, the ALJ noted that Plaintiff walks for some exercise, and she
20  testified that she could rake leaves and do some watering. AR 31. With respect to her allegations
21  of mental dysfunction, the ALJ noted Plaintiff's report to the consultative examiners that she
22  shops, cooks, cleans, and can drive (but makes her nervous). AR 32, 967, 979. The ALJ further
23  noted Plaintiff's testimony that she could go shopping with her sister in the store, watch
24  television, make her meals, and was interested in exploring a class in photography. AR 32, 55,
25  61-62.
26       With respect to her allegations of physical dysfunction, Plaintiff argues that her daily
27  activities as a whole were very minimal, and they were not at odds with her allegations. (Doc. 13
28  at 14.) Similarly, with respect to her allegations of mental dysfunction, Plaintiff argues that there

10

was nothing inconsistent between her allegations and her descriptions of her daily activities. (*Id.* at 17.) However, even where a plaintiff's activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *Molina*, 674 F.3d at 1113.

The Court concludes that the ALJ provided specific, clear and convincing reasons for discounting Plaintiff's allegations of physical and mental dysfunction. Even if one of the reasons for discounting those complaints was invalid, any such error is harmless because the ALJ provided other valid reasons for discounting Plaintiff's subjective testimony. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161-63 (9th Cir. 2008) (finding that two invalid reasons to reject a claimant's testimony were harmless error where the ALJ articulated two other reasons supported by substantial evidence in the record); *Molina*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record").

**B. Residual Functional Capacity**

Plaintiff argues that the ALJ erred by failing to explain the departure from the prior administrative medical findings of the state agency medical consultant, Dr. Saxby, (Doc. 13 at 18-19.) Plaintiff also argues that the ALJ harmfully erred by formulating an RFC that failed to account for the opinion of the consultative examiner, Dr. Hamill, regarding certain moderate limitations. (Doc. 13 at 21-22.) In short, Plaintiff argues that the ALJ failed to explain her material departure in the RFC from the prior administrative medical findings of Dr. Saxby and the opinion of the consultative examiner, Dr. Hamill. (*Id.* at 10-11.)

An RFC "is the most [one] can still do despite [his or her] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) ("We will assess your residual functional capacity based on all of the relevant medical in your case record."). Indeed, "[t]he RFC need not mirror a particular opinion; it is an assessment formulated by the ALJ based on all relevant evidence." *Ashlock v. Kijakazi*, No. 1:21-cv-01687-GSA, 2022 WL 2307594, at *3 (E.D. Cal.

11

June 27, 2022); *see Gonzalez v. Kijakazi*, No. 1:21-cv-01676-SKO, 2023 WL 6164086, at *6 (E.D. Cal. Sept. 21, 2023) ("The nature of the ALJ's responsibility is to interpret the evidence of record, including medical evidence."); *Mills v. Comm'r of Soc. Sec.*, No. 2:13-CV-0899-KJN, 2014 WL 4195012, at *4 n.8 (E.D. Cal. Aug. 22, 2014) ("[B]ecause it is the ALJ's responsibility to formulate an RFC that is based on the record *as a whole*, ... the RFC need not exactly match the opinion or findings of any particular medical source."); *accord Macias v. O'Malley*, No. 1:22-cv-01283-JLT-SKO, 2024 WL 51352, at *7 (E.D. Cal. Jan. 4, 2024) (rejecting argument that ALJ's conclusion "must mirror one specific medical opinion"), report and recommendation adopted, No. 1:22-CV-1283 JLT SKO, 2024 WL 246173 (E.D. Cal. Jan. 23, 2024).

Dr. Saxby

In formulating the RFC, the ALJ found the prior administrative findings of Dr. Saxby "mostly persuasive." AR 33. Dr. Saxby opined that Plaintiff had mild limitations in the ability to understand, remember, or apply information, moderate in limitations in the ability to interact with others, moderate limitations in the ability to concentrate, persist, or maintain pace, and moderate limitations in the ability to adapt or manage oneself. AR 165. Dr. Saxby determined that Plaintiff could understand, remember and carry out simple instructions, could sustain attention and concentration for short simple tasks, could respond to supervisors, co-workers, and work situations, and could adapt to changes in a routine work setting. AR 166, 171-74. Dr. Saxby also found that Plaintiff was "[n]ot significantly limited in the ability to carry out very short and simple instructions," (AR 171), and "[n]ot significantly limited" in the "ability to make simple work-related decisions," (AR 172). The ALJ found the mental limitations opined by Dr. Saxby to be "mostly persuasive, but given [Plaintiff's] reports of issues with people, she has limitations in social functioning." AR 33.

Plaintiff argues that the ALJ did not provide any reasons for discounting Dr. Saxby's limitation to "short simple tasks," the failure to accommodate this limitation in the RFC or explain the departure from Dr. Saxby's opinion was error, and the error was not harmless. (Doc. 13 at 19.) The Court disagrees.

In this case, the ALJ found Dr. Saxby's opinion mostly persuasive. Dr. Saxby concluded

that Plaintiff had moderate limitations in her ability to concentrate, persist, or maintain pace. AR 165. Despite this limitation, Dr. Saxby found that Plaintiff could sustain attention and concentration for short simple tasks. AR 171-72. This finding was consistent with the ALJ's RFC determination, which limited Plaintiff to "simple tasks," (AR 28), and the record reflecting that she could "complete simple routine tasks with social functioning limitations based on the totality of the evidence, including her activities of daily living," (AR 32). *See*, *e.g.*, *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (finding moderate limitations in concentration and pace were accounted for in an RFC limiting claimant to simple tasks); *Hairston v. Saul*, 827 F. App'x 772, 773 (9th Cir. 2020) (concluding limitation to simple repetitive tasks adequately accounted for moderate limitations in concentration, persistence, and pace); *see also Hughes v. Colvin*, 599 F. App'x 765, 766 (9th Cir. 2015) (finding RFC "took into account [claimant's] mental functional limitations, including moderate difficulties in social functioning, concentration, and persistence, by restricting her to simple, routine, repetitive tasks in a job where she could work independently with no more than occasional public interaction").

Although Plaintiff argues that the ALJ erred by not limiting Plaintiff to "short and simple" tasks, Dr. Saxby did not opine that Plaintiff was limited to only one-to-two-step tasks, and the RFC for simple tasks accounts for the moderate limitations assessed, along with Dr. Saxby's opinion that Plaintiff could understand, remember and carry out simple instructions and was not significantly limited in carrying out very short and simple instructions. *See Tovar v. Comm'r of Soc. Sec.*, No. 1:23-cv-00016-SAB, 2024 WL 457535, at *7 (E.D. Cal. Feb. 6, 2024) (concluding RFC for simple work accounted for moderate limitations and physician's opinion that plaintiff was not significantly limited in understanding and remembering very short and simple instructions, and carrying out very short and simple instructions); *cf. Yang v. Comm'r of Soc. Sec.*, No. 1:21-cv-00608-CDB (SS), 2025 WL 1330207, at *9 (E.D. Cal. May 7, 2025) ("The ALJ's inclusion in the RFC of a limitation that Plaintiff could understand, carry out and remember only 'simple' instructions, terms and procedures, is not inconsistent with Dr. Izzi's assessment the Plaintiff had 'moderate limits' in the ability to understand, remember and carry out simple instructions."); *Gordon M. v. Comm'r of Soc. Sec.*, No. C24-5965-BAT, 2025 WL 1131571, at *6

1   (W.D. Wash. Apr. 17, 2025) (concluding ALJ's limitation in RFC to "simple, routine tasks" a
2   reasonable translation of opined limitation to short and simple instructions; declining to find error
3   in the ALJ's failure to include "specific words"); *Rebecca R. v. Comm'r, Soc. Sec. Admin.*, No.
4   C24-5965-BAT, 2025 WL 372096, at *2 (D. Or. Feb. 3, 2025) (finding ALJ formulated an RFC
5   limiting plaintiff to "simple routine work," which reflected a rational interpretation of opinion
6   that she could understand only "short" and "simple instructions/tasks," and reconciled that
7   opinion with the remainder of the record); *but see Chad K. v. Comm'r of Soc. Sec. Admin.*, No.
8   3:24-CV-01665-JR, 2025 WL 2206028, at *2 (D. Or. Aug. 4, 2025) (concluding RFC limitation
9   to "simple tasks" inconsistent with opinion ALJ found persuasive because the RFC failed to
10  include opined limitation to "short" tasks).

11  Further, an ALJ may permissibly find opinions "persuasive" without adopting them
12  wholesale and to the exclusion of other relevant evidence. *Hernandez v. O'Malley*, No. 23-15509,
13  2024 WL 1596463, at *2 (9th Cir. Apr. 12, 2024) (explaining the ALJ assesses a claimant's RFC
14  based on all the relevant evidence in the case record).  Here, Plaintiff fails to account that the ALJ
15  expressly indicated that she did not adopt "a single assessment," but instead "assessed specific
16  restrictions on a function-by-function basis best supported by the evidence as a whole." AR 32.
17  Plaintiff appears to overlook that the ALJ also found the opinion of the consultative examiner, Dr.
18  Hamill, mostly persuasive. AR 33.  As noted above, "because it is the ALJ's responsibility to
19  formulate an RFC that is based on the record as a whole, ... the RFC need not exactly match the
20  opinion or findings of any particular medical source." *Mills*, 2014 WL 4195012, at *4 n.8.  Dr.
21  Hamill opined that Plaintiff had "no impairment in her ability to perform simple and repetitive
22  tasks" and only "mild impairment in her ability to perform detailed and complex tasks." AR 981.
23  The RFC assessment for simple tasks was consistent with that opinion.

24  Plaintiff primarily relies on *Leach v. Kijakazi*, 70 F.4th 1251 (9th Cir. 2023), to
25  demonstrate that remand is required. (Doc. 13 at 19-20; Doc. 18 at 3.)   In *Leach*, the ALJ
26  determined that the claimant was limited to following "short, simple instructions," but the ALJ's
27  question to the vocational expert asked only whether jobs existed for a person who could carry
28  out "simple job instructions." *Id.* at 1256.  The Ninth Circuit found that the ALJ erred in relying

14

on the vocational expert's testimony because the ALJ "plainly omitted the adjective 'short, thus inviting the vocational expert to identify jobs that have longer-than-short, simple instructions." *Id.* at 1256. *Leach* is distinguishable as it involved a discrepancy between the ALJ's RFC finding and the hypothetical question posed to the vocational expert. Here, the ALJ posed hypothetical questions to the VE that matched the ALJ's RFC finding. *Compare* AR 73, 74 with AR 28. Plaintiff does not challenge the ALJ's reliance on the vocational expert based on an *inconsistency* between the limitations in the ALJ's stated RFC and the question posed to the vocational expert.

Dr. Hamill

As indicated above, in formulating the RFC, the ALJ found the opinion of the consultative examiner, Dr. Hamill, "mostly persuasive." AR 33. Dr. Hamill opined that Plaintiff had no impairment in her ability to perform simple and repetitive tasks, mild impairment in her ability to perform detailed and complex tasks, mild impairment in her ability to understand and accept instructions from supervisors, moderate impairment in her ability to interact with coworkers and the public, mild impairment in her ability to perform work activities on a consistent basis without special or additional instructions, moderate impairment in her ability to maintain regular attendance and complete a normal workday or workweek without interruptions from a psychiatric condition, and moderate impairment in her ability to deal with the usual stressors encountered in the workplace. AR 981. In finding the opinion of Dr. Hamill "mostly persuasive," the ALJ reasoned that it was "generally supported by Dr. Hamill's in person examination of the claimant, but she does not have moderate limitation in maintaining attendance and completing a workday given her activities of daily living and the totality of the record, which supports less restrictive limitations. She would also have more limitations in working with the public based on her testimony." AR 33-34.

Plaintiff argues that by failing to account for Dr. Hamill's opined moderate limitation in the ability to deal with the usual stress encountered in the workplace while formulating the RFC, the ALJ committed reversible error. (Doc. 13 at 21-22.) Plaintiff cites several decisions to support the proposition that an ALJ must either explicitly reject or include in the RFC findings the same limitations that Dr. Hamill assessed in this case, and that the failure to do so was not

15

1  harmless. (Doc. 13 at 22-23.) The cited cases are distinguishable.

2  Plaintiff first cites *Devery v. Colvin*, No. 15-8503, 2016 WL 3452487, at *4-5 (C.D. Cal.
3  June 22, 2016). (*Id*. at 22.) In *Devery*, the ALJ erred by failing to provide specific and legitimate
4  reasons for implicitly rejecting the moderate limitations imposed by a consultative psychiatric
5  examiner, while favoring the opinion of the impartial medical expert, a licensed clinical
6  psychologist. 2016 WL 3452487, at *4-5. In this case, however, the ALJ was not confronted
7  with conflicting testimony from two different consulting physicians. Further, the ALJ did not
8  implicitly reject Dr. Hamill's opinion. Rather, the ALJ expressly considered Dr. Hamill's
9  opinion, explicitly found Dr. Hamill's opinion mostly persuasive, and identified the moderate
10 limitations opined by Dr. Hamill. The ALJ further found Plaintiff did not a have moderate
11 limitation in maintaining attendance and completing a workday given her activities of daily living
12 and the totality of the record, but she had more limitations in working with the public based on
13 her testimony; the ALJ then incorporated the greater limitations in working with the public in the
14 RFC. AR 28, 33-34.

15 Plaintiff next cites *Wiles v. Berryhill*, No. 2:16-cv-09558-GJS, 2017 WL 5186333, at *3
16 (C.D. Cal. Nov. 8, 2017). In *Wiles*, the ALJ erred "by failing to provide any reason for rejecting
17 *any portion* of the [consultative psychiatrist's] opinion." *Id.* The court found that the error was
18 not harmless because the RFC for restriction to simple and repetitive tasks and limited public
19 contact did not sufficiently account for moderate limitations in dealing with the usual stresses
20 encountered in the workplace, along with other moderate restrictions. *Id.* Here, however, the
21 ALJ provided reasons for finding Dr. Hamill's opinion only mostly persuasive. The ALJ also
22 included additional RFC restrictions, beyond those cited in *Wiles*, to account for Plaintiff's
23 moderate limitations. AR 28, 33-34.

24 Plaintiff also cites *Slover v. Kijakazi*, No. 1:21-cv-01089-ADA-BAM, 2023 WL 5488416,
25 *4 (E.D. Cal. Aug. 24, 2023). In *Slover*, the ALJ erred by assigning substantial weight to the
26 physicians' opinions but failing to account for certain of their moderate limitations in the RFC.
27 *Id.* at *5. The court indicated that an RFC limitation to no public contact and occasional contact
28 with coworkers and supervisors failed to account for moderate limitations in the ability to deal

with stress and changes in the workplace and in the ability to complete a normal workday without interruptions from a psychiatric condition, and that an RFC limitation to simple, routine tasks also failed to account for moderate limitations in the ability to complete a normal workday and the ability to handle stress. *Id.* at *4. Here, however, the ALJ did not assign substantial weight to any opinion. Indeed, under the applicable regulations, the ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a); *see also* AR 32 ("I cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinion, including those from medical sources."). Further, the ALJ expressly rejected Dr. Hamill's moderate limitation in the ability to complete a normal workday, (AR 34), and Dr. Saxby opined that Plaintiff could adapt to changes in a routine work setting, (AR 166, 174).

       The Court recognizes that the weight of recent case law tends to refute the notion that a limitation to simple/routine tasks with limited public contact accounts for limitations in social interaction, maintaining attendance, completing a normal workday without interruptions from a psychiatric condition, and handling work related stressors. *See*, *e.g.*, *Harrell v. Kijakazi*, No. 1:20-cv-00614-GSA, 2021 WL 4429416, at *6 (E. D. Cal. Sept. 27, 2021) (explaining weight of authority from district courts in this Circuit "tends to refute the notion that a limitation to simple/routine tasks with limited public contact adequately accounts for other limitations in social interaction, maintaining attendance, completing a normal workday without interruptions from a psychiatric condition, and handling work related stressors"); *see also Tapia v. Bisignano*, No. 1:21-cv-00478-BAM, 2025 WL 1531278, at *5 (E.D. Cal. May 29, 2025) (concluding limitation to "routine and repetitive tasks" did not account for opined moderate limitations in responding "appropriately to usual work situations and to changes in a routine work setting" and in the "ability to deal with the stress encountered in a competitive work environment"); *Milavong v. Comm'r of Soc. Sec.*, No. 1:24-cv-00278-JLT-BAM, 2025 WL 553341, at *5 (E.D. Cal. Feb. 19, 2025), report and recommendation adopted sub nom. *Milavong v. Dudek*, No. 1:24-cv-0278 JLT BAM, 2025 WL 721765 (E.D. Cal. Mar. 6, 2025) (determining RFC for simple work instructions,

occasional contact with supervisors and coworkers, no teamwork setting, and no general public contact failed to address limitations in the abilities to "respond appropriately to usual work situations and to changes in a routine work setting;" "sustain concentration, attention, consistency, and persistence in work-related activity at a reasonable pace;" and to "adapt to the usual stresses and pressures common to a competitive work environment including completing a normal workday or workweek; and responding and adapting appropriately to changes in a work setting"); *Kessler v. O'Malley*, No. 2:23-cv-01416 AC, 2024 WL 1908078, at *8 (E.D. Cal. May 1, 2024) (noting district courts are divided on the question whether simple/routine tasks with limited public contact account for moderate limitations in the ability to adapt and manage stress in the workplace and the split tends to lean in favor of the view that a restriction to simple/routine tasks does not encompass an accommodation that addresses workplace stressors); *Slover*, 2023 WL 5488416, at *4 (determining "the weight of more recent case law . . . tends to refute the argument that a limitation to simple, routine tasks in the RFC adequately accounts for moderate limitations in the ability to complete a normal workday and the ability to handle stress") (collecting cases); *Berenisia Madrigal v. Saul*, No. 1:18-cv-01129-SKO, 2020 WL 58289, at *5 (E.D. Cal. Jan. 6, 2020) (finding that restriction to simple, routine tasks with limited peer and public contact did not account for opined moderate limitations completing a normal workday or work week due to her psychiatric condition, moderate difficulties dealing with stress and changes encountered in the workplace, and an up to moderate likelihood that she would emotionally deteriorate in a work environment); *but see Valladares v. Comm'r of Soc. Sec.*, No. 1:24-cv-00913-GSA, 2025 WL 1132712, at *6 (E.D. Cal. Apr. 17, 2025) (determining that district courts throughout the Circuit have concluded a claimant's low tolerance for stress or moderate limitations in dealing with changes are encompassed in a residual functional capacity of simple, repetitive tasks).

    In this case, the Court finds that the RFC adequately accounted for Plaintiff's moderate limitation in the ability to deal with usual stress. The ALJ did not simply limit Plaintiff to simple tasks and no public contact, nor did the record support additional moderate limitations in the ability to complete a normal workday or work week or dealing with change. Further, the ALJ

acknowledged in the RFC that Plaintiff could adapt to changes in a routine work setting, could understand, remember, and carry out simple instructions, could sustain attention and concentration to complete simple tasks, and was limited to only occasional interaction with supervisors and co-workers, and no work with the general public. AR 28; *see, e. g. Alexander R. v. O'Malley,* No. CV 23-10167 RAO, 2024 WL 3556161, at *5 (C.D. Cal. July 26, 2024) (concluding limitation to simple instructions, making commensurate work-related decisions, and having no interaction with the general public and only occasional interaction with coworkers in the RFC accounted for plaintiff's moderate limitation in his ability to deal with stress in a competitive work environment); *Pullen v. Kijakazi*, No. 1:21-cv-00404-ADA-HBK, 2023 WL 373380, at *5 (E.D. Cal. Jan. 24, 2023) ("Courts may find an RFC determination adequately accounted for a claimant's stress-related limitations by limiting the claimant to occasional interaction with co-workers and the public, or . . . no contact with the public and limited contact with co-workers, and to the performance of simple, routine, tasks."); *Jacque M. v. Saul*, No. CV 19-2269-PLA, 2019 WL 6893965, at *8 (C.D. Cal. Dec. 18, 2019) (determining RFC limited to simple and repetitive tasks, no contact with the public, and limited contact with supervisors and co-workers addressed "moderate limitations in completing a normal workday or work week due to mental conditions, and handling the usual stresses, changes, and demands of gainful employment"); *but see Phounsavath v. Comm'r of Soc. Sec.*, No. 1:23-cv-01436-HBK, 2025 WL 719297, at *7 (E.D. Cal. Mar. 6, 2025) (finding RFC limiting plaintiff "to simple, routine tasks with only occasional public contact, occasional tasks that require teamwork, no quota-driven work, and working 'mainly with objects and not people'" did not account for moderate limitations in plaintiff's ability "to complete a normal workday/work week and deal with stress and changes encountered in the workplace").

## **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Clerk of the Court is DIRECTED to randomly assign a district judge to this action.

///

Further, it is HEREBY RECOMMENDED as follows:

1. Plaintiff's motion for summary judgment (Doc. 13) and appeal from the agency's decision be denied.
2. The Commissioner's request to affirm the agency's decision (Doc. 17) be granted.
3. The Clerk of the Court be directed to enter judgment in favor of Defendant Commissioner of Social Security, and against Plaintiff Tyann Crellin.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  **Objections, if any, shall not exceed fifteen (15) pages or include exhibits**.  **Exhibits may be referenced by document and page number if already in the record before the Court.  Any pages filed in excess of the 15-page limit may not be considered.**  The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __**August 21, 2025**__          ___/s/ Barbara A. McAuliffe___
                                                    UNITED STATES MAGISTRATE JUDGE