**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TYANN CRELLIN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>FRANK BISIGNANO, Commissioner of Social Security[1],<br><br>　　　　Defendant. | Case No.  1:24-cv-00996 JLT BAM<br><br>ORDER ADOPTING THE FINDINGS AND RECOMMENDATIONS, DENYING PLAINTIFF'S APPEAL, GRANTING DEFENDANT'S REQUEST TO AFFIRM, AND DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT<br><br>(Docs. 13, 17, 20) |

　　　　Tyann Crellin filed unsuccessful applications for disability insurance benefits and supplemental security income with the Social Security Administration.  (Doc. 10-11 at 288–304). The agency denied her applications after a hearing before an Administrative Law Judge (ALJ), who issued a written opinion, and after the Appeals Council denied Plaintiff's request to review the ALJ's decision.  (*Id.* at 1–5, 19–36, 46–76).  Plaintiff then sought review in this Court.  (Doc. 1.)

　　　　Plaintiff moves for summary judgment on the Administrative Record.  (Doc. 13.)  She makes three arguments.  (*Id.* at 6–7.)  First, she argues the ALJ did not give "specific, clear and

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes Frank Bisignano as the defendant in this action.

1

convincing reasons" to reject or discount her allegations that "she was unable to work because of symptoms from herniated spinal discs, sciatic nerve pain, diabetes, bipolar disorder, agoraphobia, anxiety, and depression." (*Id.* at 7, 11 (citation omitted).) Second, she argues the ALJ's conclusions contradicted the medical opinions of a psychologist consultant, Stephen Saxby, Ph.D., and she contends the ALJ did not explain or justify the contradiction. (*Id.* at 18.) Third, she argues similarly that the ALJ's conclusions contradicted the opinions of a psychiatric examiner, Meghan Hamill, Psy.D., again without justification. (*Id.* at 21.) The Commissioner of Social Security, the defendant in this action, opposes Plaintiff's motion, disagreeing with each of the three points above, and filed a cross-motion for summary judgment. (Doc. 17.) Plaintiff filed a reply. (Doc. 18.)

The matter was referred to the assigned magistrate judge under this District's Local Rules. The magistrate judge has prepared findings and recommendations addressing each of Plaintiff's arguments. (Doc. 20.) First, the magistrate judge determined that the ALJ had provided specific, clear and convincing reasons for discounting plaintiff's subjective complaints of physical and mental dysfunction. (*Id.* at 4–11.) The magistrate judge also found that the ALJ's conclusions were consistent with the findings by Drs. Saxby and Hamill. (*Id.* at 12–19.) Thus, the magistrate judge recommends denying plaintiff's appeal, affirming the agency's determination to deny benefits, and entering judgment in favor of defendant. (*Id.* at 19–20.)

The Court served the Findings and Recommendations on the parties and notified them that any objections were due within fourteen days. (Doc. 20 at 20.) The Findings and Recommendations also warned that a failure to object "may result in the waiver of the 'right to challenge the [magistrate judge's] factual findings' on appeal." (*Id.* (quoting *Wilkerson v. Wheeler*, 772 F.3d 32, 838–38 (9th Cir. 2014)).) Plaintiff filed objections, but they address only her arguments related to Dr. Saxby's opinions. (Doc. 21.) Defendant responded to the objections. (Doc. 22.)

The Court has reviewed the case de novo. With respect to the first and third issues raised in Plaintiff's motion, the Findings and Recommendations are supported by the record and the proper analysis. The court adopts those portions of the Findings and Recommendations. With

2

respect to Plaintiff's arguments about the second issue (Dr. Saxby's opinions), the court adopts the Findings and Recommendations in part, as explained below.

A few more details about Plaintiff's application and the ALJ's decision are a necessary to explain the Court's decision. As the magistrate judge accurately summarized in the Findings and Recommendations, the ALJ decided Plaintiff was not disabled by following the Social Security Administration's five-step evaluation process. (Doc. 20 at 2.) The ALJ found Plaintiff had not been engaged in "substantial gainful employment" since January 1, 2020 (step one), and Plaintiff had several severe impairments (step two). (*Id.* at 2.) But because these impairments did not meet or equal the impairments listed in certain regulations (step three), the ALJ went on to decide what "residual functional capacity" of "RFC" Plaintiff had, i.e., the most she could still do despite her limitations, based on the evidence in the record (step four), and to decide what work Plaintiff could perform with this residual functional capacity, if any (step five). (*Id.* at 2–3.)

Dr. Saxby's opinions came into play at the fourth step in this process: in deciding what residual functional capacity Plaintiff had. (*See* AR 28–34.[2]) Dr. Saxby found Plaintiff had a mild impairment on her ability to understand, remember, or apply information. (AR 165.) He found she had moderate impairments on her abilities to interact with others; to concentrate, persist, or maintain a pace; and to adapt or manage herself. *Id.* She had no significant limit on her "ability to carry out very short and simple instructions." (AR 171). This meant that in Dr. Saxby's opinion, Plaintiff could "understand, remember and carry out simple instructions." (AR 166, 174.) Plaintiff could also, by his assessment, "sustain attention and concentration for short simple tasks," as well as "respond to supervisors, co-workers, and work situations," and "adapt to changes in a routine work setting." (*Id.*) The ALJ found these opinions were "mostly persuasive," but not entirely so, "given her reports of issues with people," which showed she had "limitations on social functioning" as well. (AR 33.)

Dr. Saxby was just one of many professionals who had offered their opinions in Plaintiff's

---

[2] Citations in this format refer to the Administrative Record, filed in this action at Docs. 10-11 and 10-12. For consistency with the parties' briefing and the Findings and Recommendations, the Court refers to the page numbers at the bottom right of each page of the Administrative Record, not those applied by the CM/ECF system.

1  case by the time the ALJ made her decision.  (*See* AR 32–34.)  Some of these opinions were
2  different from Dr. Saxby's opinions.  For example, Dr. Hamill, the psychiatric examiner noted
3  above, examined Plaintiff and wrote that she had only "mild" impairments on her abilities "to
4  perform detailed and complex tasks" and "to understand and accept instructions from
5  supervisors."  (AR 981.)  And like Dr. Saxby's opinions, the ALJ found Dr. Hamill's opinions
6  were "mostly persuasive."  (AR 33–34.)

7        The ALJ did not to adopt any single one of these multiple opinions or assessments.  Nor
8  did she give any one of them "controlling" weight.  (AR 32.)  She instead "assessed specific
9  restrictions on a function-by-function basis best supported by the evidence as a whole."  (*Id.*)
10 This assessment led the ALJ to conclude Plaintiff could (1) "understand, remember, and carry out
11 simple instructions," (2) "sustain attention and concentration to complete simple tasks,"
12 (3) "adapt to changes in a routine work setting," (4) "interact with co-workers and supervisors
13 occasionally," and (5) "cannot work with the general public."  (*Id.*)  This was Plaintiff's residual
14 functional capacity, the yardstick the ALJ would use to decide whether there was work Plaintiff
15 could perform in the national economy and thus whether Plaintiff was "disabled" for purposes of
16 her claims.  (*See* AR 34–35.)

17       The parties' current dispute focuses on the second of these limitations, i.e., the ALJ's
18 finding that Plaintiff could "sustain attention and concentration to complete simple tasks."  This
19 finding differed from Dr. Saxby's opinion in one small but crucial respect.  As noted, in Dr.
20 Saxby's opinion, Plaintiff could "sustain attention and concentration for *short* simple tasks,"
21 rather than merely "simple tasks."  (AR 166, 174 (emphasis added).)  Plaintiff argues the
22 omission of the word "short" brings the ALJ's decision into conflict with Dr. Saxby's opinions.
23 (*See, e.g.*, Doc. 21 at 2.)  Defendant disagrees.  (*See, e.g.*, Doc. 22 at 1–2.)  The Magistrate Judge
24 found the ALJ's determination was "consistent with" Dr. Saxby's opinion. (Doc. 20 at 13.)  The
25 Magistrate Judge also found the ALJ's determination was based on more than judge Dr. Saxby's
26 assessment, so it could not be expected to "exactly match" that assessment alone.  (*Id.* at 14
27 (quoting *Mills v. Comm's of Soc. Sec.*, No. 2:13-cv-0899 KJN, 2014 WL 4195012, at *4 n.8 (E.D.
28 Cal. Aug. 22, 2014)).)

4

1    It might seem at first blush that the difference between "short, simple tasks" and "simple tasks" is not particularly meaningful, given the likelihood that most simple tasks are also short. But as the Ninth Circuit has explained, the difference might prove to be decisive in a case like this one. *See Leach v. Kijakazi*, 70 F.4th 1251, 1256–57 (9th Cir. 2023). In *Leach*, the ALJ had determined that the plaintiff claimant could "perform simple, routine tasks" and could "follow short, simple instructions." *Id.* at 1254. As is "often" the case, ALJ then called on a vocational expert to testify about what jobs, if any, a hypothetical person with specific limitations could perform. *Id.* But rather than asking the vocational expert about jobs involving "short, simple instructions," the ALJ asked what jobs a person could do if limited to merely "simple job instructions." *Id.* at 1256. A question that does not reflect all of a person's limitations "has no evidentiary value," *id.* at 1255 (citation omitted), so the ALJ erred by relying on the vocational expert's answer, *id.* at 1256. But more crucially for purposes of this case, the error was not harmless. *See id.* at 1256–57. In response to the ALJ's question, the vocational expert had identified jobs that required workers "to carry out detailed but uninvolved written or oral instructions" rather than "simple one- or two-step instructions." *Id.* at 1256 (quoting Dict. of Occupational Titles App. C, § III (4th ed. 1991)). Because "detailed" instructions might very well be longer than "one- or two-step instructions," those jobs might not actually be jobs the plaintiff claimant could have performed, so the ALJ might have rejected her claim in error, and further proceedings were necessary. *See id.* at 1256–57, 1258.

Plaintiff relies heavily on *Leach*. (*See, e.g.*, Doc. 21 at 3.) The Circuit's opinion is indeed instructive. It illustrates why "short and simple" might be a meaningfully stricter limitation than "simple." In this case, as in *Leach*, the ALJ asked a vocational expert to identify jobs, and again, as in *Leach*, the vocational expert identified three jobs that each require "detailed but uninvolved written or oral instructions," i.e., a small products assembler, a route clerk and a marking clerk. (*See* AR 35 (citing Dict. Occupational Titles §§ 739.687-030, 222.687-022, 209.587-034 (4th ed. 1991)).) It is quite plausible that someone limited to only "short and simple" tasks and instructions might not be capable of performing these jobs. The first, for example, small products assembler, is expected to cut, fit and fasten together products like shoes and loudspeakers using

5

machines like "arbor presses, punch presses, taps, spot-welding or riveters." Dict. Occupational Titles § 739.687-030 (4th ed. 1991). The assembly of a shoe or a loudspeaker with a punch press or a spot welder may very well involve merely simple tasks and instructions, but not short tasks and instructions.

But as the magistrate judge pointed out, unlike *Leach*, this case is not about a mismatch between Plaintiff's residual functional capacity and the vocational expert's opinions. (*See* Doc. 20 at 14–15.) Rather, it is about the differences, if any, between one doctor's opinions and the ALJ's conclusions about Plaintiff's residual functional capacity. (*See id.*) The Court cannot distinguish *Leach* for that reason alone, as the Magistrate Judge recommends, (*id.*), and as Defendant urges, (Doc. 22 at 3.) The Circuit's opinion in *Leach* illustrates the practical implications of omitting the word "simple" from the description of Plaintiff's residual functional capacity. The Court agrees with Plaintiff that the Circuit's opinion in *Leach* shows the distinction between "short, simple tasks" and "simple tasks" is a "concrete" one that could—if erroneous— lead to mistaken conclusions about a claimant's capacity to work in a particular job, given the ALJ's reliance on the Dictionary of Occupational Titles and the vocational expert's testimony. (Doc. 21 at 3.) If the ALJ did not explain her finding that plaintiff could "sustain attention and concentration to complete simple tasks," or if the ALJ's explanation is not supported by substantial evidence, the omission cannot stand. *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

Plaintiff argues the ALJ did not explain her decision. (*See, e.g.*, Doc. 21 at 2.) The Court disagrees. Before the ALJ catalogued the various medical assessments in the record before her, she summarized relevant clinical findings—including the results of an MRI, an electroencephalogram, mental status examinations, and psychological consultations—and Plaintiff's symptoms, her responses to medication, and her ability to complete "simple routine tasks" in her daily life. (*See* AR 31–32.) The ALJ then summarized each doctor's opinions and explained what persuasive value she gave them and why. (AR 33–34.) The most persuasive of these opinions were, in the ALJ's view, the two discussed above, by Drs. Saxby and Hamill, which she described as "mostly persuasive." (*Id.*) But as noted above, their opinions were not

1    perfect matches for one another.  While Dr. Saxby had written that Plaintiff could "sustain
2    attention and concentration for short simple tasks" and that Plaintiff was "[m]oderately limited"
3    in her "ability to carry out detailed instructions," Dr. Hamill had written that Plaintiff had "no
4    impairment in her ability to perform simple and repetitive tasks and mild impairment in her
5    ability to perform detailed and complex tasks."  (AR 33; *see also* AR 166, 174, 981.)  The ALJ
6    wrote that she would "not adopt a single assessment" from those offered by various experts,
7    including Drs. Saxby and Hamill, but would instead assess "specific restrictions on a function-by-
8    function basis best supported by the evidence as a whole."  (AR 32.)  The ALJ thus explained her
9    ultimate decision not to adopt Dr. Saxby's opinion verbatim—nor Dr. Hamill's, for that matter—
10   but instead to find that Plaintiff could "sustain attention and concentration to complete simple
11   tasks."  (*Id.*)

12        The ALJ's explanation is also supported by substantial evidence.  As the magistrate judge
13   explained in detail, the ALJ's conclusions about Plaintiffs' mental limitations had support in her
14   medical records.  (*See* Doc. 20 at 6–11.)  The ALJ also relied reasonably on Dr. Hamill's
15   opinions, which she reached after examining Plaintiff in person, and which she explained in a
16   detailed, written report.  (AR 33–34, 977.)  Dr. Hamill summarized Plaintiff's responses to
17   questions and her demeanor and explained a variety of conclusions about her memory,
18   intelligence, ability to perform mental calculations, concentration, abstract thinking, judgment,
19   and insight.  (AR 979–80.)  For example, Dr. Hamill found Plaintiff's "short-term, long-term and
20   working memory appeared intact," her intelligence appeared to be "in the average range," she
21   could perform common arithmetic, she did not "display any significant deficits with
22   concentration," and she summarized Plaintiff's intelligent interpretations of two common
23   proverbs.  (*See* AR 33–34, 979–80.)  Finally, Dr. Saxby found only "moderate" limitations on
24   Plaintiff's ability to "carry out detailed instructions" and "to maintain attention and concentration
25   for extended periods."  (AR 171.)  This was substantial evidence—i.e., more than a "scintilla,"
26   *Richardson v. Perales*, 402 U.S. 389, 402 (1971)—to support the ALJ's finding that Plaintiff
27   could sustain attention and concentration to complete simple tasks, even if they were not short.
28   *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) ("[A]n ALJ's assessment of

7

a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony.").

Thus, the Court **ORDERS**:

1. The Findings and Recommendations (Doc. 20) are **ADOPTED IN PART** as specified above.
2. Plaintiff's motion for summary judgment and appeal from the agency's decision (Doc. 13) are **DENIED**.
3. Defendant's request to affirm the administrative decision (Doc. 17) is **GRANTED**.
4. The Clerk of the Court is directed to terminate any pending motions; enter judgment in favor of Defendant Frank Bisignano, Commissioner of Social Security, and against Plaintiff Tyann Crellin; and to close this case.

IT IS SO ORDERED.

Dated:   **January 8, 2026**

UNITED STATES DISTRICT JUDGE

8